```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
```
------------------------------------------------

**FRITZ G. BLUMENBERG,**

                **Petitioner,**

    - against -

**UNITED STATES OF AMERICA,**

                **Respondent.**

------------------------------------------------

05 Civ. 9416 (JGK)
01 Cr. 571 (JGK)

<u>MEMORANDUM OPINION</u>
<u>AND ORDER</u>

**JOHN G. KOELTL, District Judge:**

Fritz Blumenberg, appearing pro se, moves pursuant to 28 U.S.C. § 2255 to vacate his conviction and sentence. The petitioner also has filed a motion pursuant to the All Writs Act, 28 U.S.C. § 1651, for a writ of error coram nobis, two documents designated "Mandatory Judicial Notice," and a "Motion to Expedite Vacatur of Illegal Conviction/Sentence Pursuant to § 2255."

The defendant was convicted pursuant to his plea of guilty to one count of conspiracy to commit wire fraud and mail fraud, in violation of 18 U.S.C. § 371; one count of wire fraud, in violation of 18 U.S.C. §§ 1343 and 2; one count of mail fraud, in violation of 18 U.S.C. §§ 1341, and 2; and two counts of filing false tax returns, in violation of 26 U.S.C. § 7201. He was sentenced principally to 30 months imprisonment to run concurrently on all counts and has been removed from the United States after the service of his sentence.

The defendant filed a § 2255 petition alleging ineffective assistance of counsel. (05 Civ. 9416 (JGK), Docket No. 1). The petition is dated and signed August 16, 2005, and was received by the Pro Se Office of this Court on October 31, 2005. The defendant subsequently filed a motion for a writ of error coram nobis dated December 16, 2005, seeking to vacate his conviction, and served a document entitled "Mandatory Judicial Notice" dated April 8, 2006. (01 Cr. 571 (JGK), Docket Nos. 163, 165.) The Court issued an Order dated April 19, 2006, in which it indicated that the subsequent filings would be treated as amendments to the petitioner's § 2255 motion. (01 Cr. 571 (JGK), Docket No. 167.) The Court treats the subsequent filings as amendments because the petitioner is currently serving a three-year term of supervised release which was imposed as part of his sentence, and a writ of error coram nobis is only available to a petitioner who is no longer in custody pursuant to the sentence he seeks to attack. See Scanio v. United States, 37 F. 3d 858, 860 (2d Cir. 1994) (petitioner serving supervised release is "in custody" for purposes of § 2255); Cisse v. United States, 330 F. Supp. 2d 336, 340 (S.D.N.Y. 2004). Because the petitioner is proceeding pro se, the Court liberally construes his subsequent filings as amendments to the § 2255 petition.

II

The Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA"), imposes a one-year statute of limitations on an application for a writ of habeas corpus. 28 U.S.C. § 2255(f). The limitations period for such a claim begins to run from the date on which the judgment of conviction becomes final.[1] A conviction becomes final for the purposes of § 2255 when the Supreme Court "affirms a conviction on the merits on direct review or denies a petition for a writ of certiorari, or when the time for filing a certiorari petition expires." Clay v. United States, 537 U.S. 522, 527 (2003). A petition for certiorari must be filed within 90 days from the date of entry of judgment below. See Supreme Court Rules 13(1), 13(3).

In this case, the Court of Appeals filed its decision affirming the sentence on May 13, 2004. United States v. Blumenberg, 96 Fed. Appx. 776 (2d Cir. 2004). Thus, the petitioner's conviction became final on August 11, 2004, ninety days after the entry of the judgment of the Court of Appeals. AEDPA's one-year statute of limitations expired one year from this date, on August 11, 2005. The petition was signed and dated August 16, 2005, and the petition is therefore untimely. The petitioner's reliance on the prison mailbox rule, announced in Houston v. Lack, 487 U.S. 266 (1972), and codified in Federal Rule

---

[1] The petitioner does not assert, and there is nothing to indicate, that any of the tolling periods delineated in 28 U.S.C. § 2255 apply.

of Appellate Procedure 4(c)(1), is without merit. The petition was signed and dated after the expiration of the limitations period, and therefore the petition could not have been placed in the institutional mailbox prior to the expiration of the limitations period.[2]

### III

In any event, the petition is without merit. The petitioner alleges that his counsel was ineffective for various reasons. To establish a claim of ineffective assistance of counsel, the petitioner must show both that: (1) his counsel's performance was deficient in that it was objectively unreasonable under professional standards prevailing at the time, and (2) that his counsel's deficient performance was prejudicial to his case. See Strickland v. Washington, 466 U.S. 668, 687 (1984); Bunkley v. Meachum, 68 F.3d 1518, 1521 (2d Cir. 1995).

The petitioner cannot meet the first prong of this test merely by showing that his counsel employed poor strategy or made a wrong decision. Instead, the defendant must establish that his counsel "made errors so serious that counsel was not functioning as the 'counsel' guaranteed. . . by the Sixth Amendment." Strickland, 466 U.S. at 687. In fact, there is a "strong

---

[2] Because the Court finds that the petition is untimely, it is unnecessary to reach the Government's argument that the claims in the April 8, 2006 "Mandatory Judicial Notice" do not relate back to the petitioner's claims in the original petition. In any event, as addressed below, the petitioner's claims in the April 8, 2006 "Mandatory Judicial Notice" are without merit.

4

presumption" that defense counsel's conduct fell within the broad spectrum of reasonable professional assistance, and a defendant bears the burden of proving "that counsel's representation was unreasonable under prevailing professional norms and that the challenged action was not sound strategy." Kimmelman v. Morrison, 477 U.S. 365, 381 (1986) (citing Strickland, 466 U.S. at 688-89).

To meet the second prong of the Strickland test, the petitioner must show that "[t]here is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694; see also Ramos v. United States, No. 97 Civ. 2572, 1998 WL 230935, at *3 (S.D.N.Y. May 8, 1998).

Where a defendant challenges a guilty plea on the basis of alleged ineffective assistance of counsel, the defendant must show that, "there is a reasonable probability that, but for counsel's errors, [the defendant] would not have pleaded guilty and would have insisted on going to trial." United States v. Couto, 311 F.3d 179, 187 (2d Cir. 2002) (citing United States v. Hernandez, 242 F.3d 110, 112 (2d Cir.2001) (per curiam)) (alteration in original and citation omitted); see also Hill v. Lockhart, 474 U.S. 52, 59 (1985). In the context of sentencing, the petitioner must show that but for counsel's ineffectiveness, there is a reasonable probability that the sentence imposed would have been

different.  See United States v. Workman, 110 F.3d 915, 920 (2d Cir. 1997).

In his original petition, the petitioner alleges that he was not advised of the immigration consequences of his plea, and in his motion for coram nobis relief, the petitioner claims that his attorney misrepresented the possible deportation consequences of his plea.  The Court of Appeals has held that "an affirmative misrepresentation by counsel as to the deportation consequences of a guilty plea is today objectively unreasonable," but has not determined "whether the standards of attorney competence have evolved to the point that a failure to inform a defendant of the deportation consequences of a plea would by itself now be objectively unreasonable."  Couto, 311 F.3d at 188; see also Cisse, 330 F. Supp. 2d at 342-43; Castillo-Acevedo v. INS, No. 02 Civ. 9623, 2003 WL 22416122, at *4-*5 (S.D.N.Y. Oct. 22, 2003).

The records submitted refute the allegation that Mr. Weinstein, the petitioner's trial counsel, affirmatively misrepresented the immigration consequences of the petitioner's guilty plea.  In support of his claim, the petitioner does not submit any evidence other than his unsworn assertion that Mr. Weinstein stated that the petitioner "could hardly be deported from this country for committing fraud against a German Corporation." (Def.'s motion dated Dec. 16, 2005 at 9.)  However, this allegation is refuted by the evidence in the record.  In

6

connection with sentencing, defense counsel submitted a sentencing memorandum a few months after the defendant entered his guilty plea, in which defense counsel sought a downward departure based on extraordinary collateral consequences presented by deportation. In this memorandum, Mr. Weinstein stated that "it is almost certain that [the petitioner] will be deported to Germany." (Def. letter dated Aug. 21, 2002 at 8, 12.) At sentencing, both Mr. Weinstein and the petitioner stated that the petitioner was likely to be deported. (Sent. Tr. 4, 7, May 22, 2003.) These statements belie the petitioner's allegations that Mr. Weinstein previously represented to him that he would not be deported.

The petitioner also fails to present any evidence to show that he was prejudiced by any alleged statements regarding his citizenship. Even assuming that the alleged misrepresentation was made, the record evidence makes clear that the petitioner was aware of the possible immigration consequences of his plea prior to the imposition of his sentence, but did not make any request to withdraw his guilty plea. Therefore, the petitioner has failed to establish a reasonable probability that he would have insisted on going to trial had he been aware of the possible immigration consequences of his guilty plea. Instead, the petitioner chose to pursue a downward departure at sentencing based on extraordinary collateral consequences resulting from possible deportation. Because the petitioner has failed to show that his counsel's

7

representation was objectively unreasonable or that he suffered any prejudice, this claim for ineffective assistance of counsel does not satisfy the Strickland test.

Second, the petitioner argues that his counsel was ineffective because he failed to engage an independent psychiatric expert to argue the defendant's diminished mental capacity. However, in connection with sentencing, the defendant relied on evidence from five separate doctors, including Dr. Stanley Heller, his treating psychiatrist, and Dr. Richard Kassner, who was not one of the petitioner's treating physicians. Defense counsel's decision not to employ yet a sixth doctor cannot be found to fall below a standard of objective reasonableness and therefore is insufficient to substantiate a claim of ineffective assistance of counsel.[3] The petitioner has also failed to establish that he was prejudiced by the failure to obtain an additional independent evaluation because the petitioner has not shown that there is a reasonable probability that the sentence imposed would have been different.

The petitioner next argues that it was ineffective assistance of counsel to fail to seek a competency hearing prior to his guilty plea in the face of the fact that the defendant was taking psychotropic drugs. For a defendant to be competent to proceed,

---

[3] To the extent the petitioner is arguing that the Court's two-level downward departure based on diminished mental capacity was insufficient, this was the subject of extensive briefing and a Fatico hearing, and was affirmed on appeal. The petitioner has offered no basis to re-litigate the issue.

"[t]he defendant must have (1) 'sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding' and (2) 'a rational as well as factual understanding of the proceedings against him.'" United States v. Nichols, 56 F.3d 403, 410 (2d Cir. 1995) (quoting Dusky v. United States, 362 U.S. 402, 402 (1960) (per curiam)); see also 18 U.S.C. § 4241(d).

The Court carefully examined the defendant as to his competence at the time of his plea and also received assurances from defense counsel. (Plea Tr. 9-13, Apr. 5, 2002.) There was no indication that the defendant could not rationally consult with his lawyer or rationally and factually understand the proceedings. In connection with the petitioner's psychiatric medications at the time he entered his guilty plea, the Court engaged in the following colloquy with the petitioner:

> THE COURT:  Is there anything about any of the medication that you have been taking that interferes with your ability to understand these proceedings?
>
> THE DEFENDANT:  No, sir.  This particular psychiatrist has really done a perfect job.  I am fine.  I am clear right now.
>
> * * *
>
> THE COURT:  Is there anything about the medication that you have taking [sic] in the last 24 hours that interferes with your ability to understand these proceedings?
>
> THE DEFENDANT:  No.  The Alprazolam and the Xanax substitute is something that calms my nerves.  That's all.  I understand you perfectly well.
>
> The Court:  Is your mind clear today?

9

> THE DEFENDANT: Yes, sir.
>
> THE COURT: Are you feeling all right today?
>
> THE DEFENDANT: I feel fine.
>
> THE COURT: Do either counsel have any doubt as to the defendant's competence to plead at this time?
>
> MR. WEDDLE: No, your Honor.
>
> MR. WEINSTEIN: No, your Honor.

(Plea Tr. 10-11.) There was nothing in the plea allocution that suggested a competency hearing was required. The cases in this Circuit make clear that the plea allocution was satisfactory and that, under the circumstances, no competency hearing was required. See, e.g., United States v. Quintieri, 306 F. 3d 1217, 1233-34 (2d Cir. 2002); see also United States v. Morrison, 153 F.3d 34, 46-47 (2d Cir. 1998); and Nichols, 56 F.3d at 414. Indeed, despite the extensive reports from various doctors, and a Fatico hearing with respect to the defendant's alleged diminished mental capacity, the defendant points to no medical evidence that he was not competent to plead.[4] The defendant's treating psychiatrist testified to a diminished capacity at the time of the crimes at issue, but did not state that the defendant was not competent to proceed.

---

[4] The petitioner also claims a Rule 11 violation in connection with his guilty plea on the same grounds, but there is no basis for such a claim. The Government argues that the petitioner could have raised his Rule 11 claim on appeal, and having failed to do so, the claim is procedurally defaulted. See Rayford v. United States, No. 06 Civ. 1408, 2007 WL 1225506, at *2 (S.D.N.Y. Apr. 20, 2007); see generally Massaro v. United States, 538 U.S. 500 (2003). The Government argues that other claims advanced by the petitioner have been procedurally defaulted as well. Because the Court finds that the claims are time-barred, and that in any event are without merit, it is unnecessary for the Court to determine whether these claims have been procedurally defaulted.

Fourth, the petitioner argues that his defense counsel was ineffective in failing to object to the Sentencing Guidelines calculations contained in the Pre-Sentence Report ("PSR") concerning the aggregate loss figure attributable to the offense conduct. The Pre-Sentence Report used the Sentencing Guidelines effective November 1995, the Guidelines in effect at the time of the offense, and calculated the aggregate loss figure to be $2,448,446.66. The petitioner argues that the PSR incorrectly applied § 2F1.1(b)(1)(N), which is applicable to loss figures above $2.5 million, rather than § 2F1.1(b)(1)(M), which is applicable when the loss figure exceeds $1.5 million but does not exceed $2.5 million. The petitioner asserts that this failure resulted in an inappropriate increase of one level under the Guidelines. The Government explains that the defendant's calculation of the Guidelines is incorrect, and the Court agrees.

In contesting the Guidelines calculations, the petitioner incorrectly applies § 2F1.1, rather than § 2T1.1.[5] Pursuant to § 3D1.3(b), § 2T1.1, the tax offense guideline, was used as the applicable guideline because the application of § 2T1.1 to the aggregate loss amount resulted in a higher offense level than the application of § 2F1.1, the fraud guideline. (See PSR ¶ 40.)

---

[5] In should be noted that, in any event, the PSR also correctly calculated the adjusted offense level under § 2F1.1. Contrary to the petitioner's argument, the Probation Department did apply § 2F1.1(b)(1)(M), resulting in a 12 level increase. (PSR ¶ 28.) As noted above, however, the PSR also correctly concluded that § 2T1.1, not § 2F1.1, was the applicable guideline to be used for the purposes of sentencing the petitioner.

Pursuant to § 2T4.1(O), the base offense level was therefore 20, because the loss exceeded $1.5 million, but did not exceed $2.5 million. (See PSR ¶ 34.) At a conference prior to sentencing, the defendant was prepared to accept a loss figure within this range. (Tr. 6, Feb. 24, 2003.) In finding that the aggregate loss as calculated in the PSR was a reasonable figure, the Court rejected the Government's argument that the loss should be set above $2.5 million, which would have resulted in an additional increase under the Guidelines. (Sent. Tr. 11-12.) The loss calculations contained in the PSR, and adopted by the Court, were correct. Defense counsel's failure to object to the accurate loss calculations fails the first prong of the Strickland test.

Lastly, the defendant argues that his counsel was ineffective in failing to raise the Government's alleged violation of Article 36 of the Vienna Convention on Consular Relations (the "Vienna Convention"), Apr. 24, 1963, art. 36, para. 1, 21 U.S.T. 77, 596 U.N.T.S. 261, as a mitigating factor in sentencing. Article 36 "requires a host state to notify the consul of a foreign state when a national of that foreign state is arrested." Moyhernandez v. United States, No. 02 Civ. 8062, 2004 WL 3035479, at *2 (S.D.N.Y. Dec. 29, 2004). The Court of Appeals for the Second Circuit has held that Article 36 "do[es] not create any fundamental rights for a foreign national." United States v. De La Pava, 268 F.3d 157, 165 (2d Cir. 2001) (internal quotation

marks omitted and alterations in original) (holding that a violation of the consular-notification provision is not a basis to dismiss an indictment).  Furthermore, a violation of the Vienna Convention does not provide a defendant in a criminal case with the right to any relief unless the defendant can establish prejudice as a result of the violation.  See Bennett v. United States, No. 99 Civ. 4481, 2000 WL 10213, at *2 (S.D.N.Y. Jan. 5, 2000) (collecting cases).

The petitioner has satisfied neither prong of the Strickland test.  First, the failure to raise the alleged violation of Article 36 did not fall below an objective standard of reasonableness.  The petitioner cites to no cases suggesting that, at the time of his sentencing, the alleged violation of Article 36 could be used as a mitigating factor in sentencing.  The petitioner was represented by able counsel at sentencing who successfully argued for a two-point downward departure and a sentence at the bottom of the Guidelines range.  In addition, because the petitioner is unable to show that he suffered any prejudice as a result of the violation of the Vienna Convention, he is also unable to demonstrate that he was prejudiced by his counsel's failure to raise the alleged violation in this Court in connection with sentencing and thus he is unable to meet the second prong of Strickland.  See id.

The alleged failure to advise a defendant of his consular-notification rights or to pursue relief on the basis of alleged Article 36 violations does not constitute ineffective assistance of counsel. See De La Pava, 268 F.3d at 165-66; United States v. Alcantara, No. 02 Civ. 5991, 2003 WL 102873, at *3 (S.D.N.Y. Jan. 10, 2003) ("Because [the defendant] was represented by able counsel at both his plea and sentencing, there is no showing of prejudice due to counsel's failure to inform [the defendant] of his consular notification rights."); United States v. Erdil, 230 F. Supp. 2d 292, 297-298 (E.D.N.Y. 2002); United States v. Arango, No. 99 Civ. 3726, 1999 WL 1495422, at *3 (E.D.N.Y. Dec. 29, 1999) ("[A] defense attorney cannot be labeled ineffective for failing to advise his client of the right to speak to a diplomatic official who could do no more to protect his rights than counsel himself.").

For the reasons explained above, the petitioner was not prejudiced by the failure to notify the German consulate, and therefore his counsel was not deficient for failing to seek such relief. Under Strickland, the defendant cannot rely on the failure to raise a meritless argument as a basis for a claim of ineffective assistance of counsel. See Aparicio v. Artuz, 269 F.3d 78, 99 (2d Cir. 2001).

IV.

In the "Mandatory Judicial Notice" dated April 8, 2006, the petitioner argues that the petitioner's plea should be vacated because the Government failed to disclose a 1996 audit of Burda Media in violation of its discovery obligations under Brady v. Maryland, 373 U.S. 83 (1963). The petitioner argues that this evidence was material to his defense because the 1996 audit supports the argument that there was no merit to the charge of mail and wire fraud. However, even putting aside the fact that this new claim appears to be time-barred, there is no merit to the claim.

The petitioner has failed to establish a violation of Brady. In order to establish a violation of Brady, a defendant must show that the Government failed to disclose favorable evidence, and that the evidence it suppressed was material. United States v. Payne, 63 F.3d 1200, 1208 (2d Cir. 1995) (citing Brady, 373 U.S. at 87); see also United States v. Esposito, 834 F.2d 272, 275 (2d Cir. 1987). The petitioner offers no evidence to show that the Government had knowledge or was in possession of the 1996 financials or any other allegedly materially exculpatory documents prior to the time of the petitioner's plea. Conclusory or speculative allegations that the Government failed to disclose evidence are insufficient to support a Brady violation. See

Skinner v. Duncan, No. 01 Civ. 6656, 2003 WL 21386032, at *25 and n.39 (S.D.N.Y. June 17, 2003) (collecting cases).

Moreover, there can be no Brady violation where "if the defendant or his attorney either knew, or should have known, of the essential facts permitting him to take advantage of [that] evidence." Payne, 63 F.3d at 1208 (internal quotation marks omitted). It appears that the petitioner contends that the 1996 financials are relevant to the accounting practices and relationship between Burda Media and Burda Holding, namely that Burda Media was a "profit-center," and that the wire transfers made from Burda Holding were not reflected in the financials of Burda Media. The petitioner asserts that similar audits of Burda Media were not performed while he was Burda Media's Chief Executive Officer ("CEO"). However, it is clear that based on his position as CEO, the petitioner was in a position to know of the essential facts he claims were suppressed by the nondisclosure of the 1996 financials. The petitioner admits that Burda Media was restructured into a "self-sustaining entity" in early 1992, and that as CEO he was involved in this restructuring. (Def.'s Mandatory Judicial Notice dated April 8, 2006 at 4.) Therefore, the alleged suppression of the 1996 audit would not have prevented the petitioner from taking advantage of the allegedly materially exculpatory evidence he alleges was suppressed.

The petitioner has also failed to establish that the 1996 financials are materially exculpatory. It is unclear how the internal accounting practices of Burda Media are relevant to whether or not the petitioner participated in a fraudulent scheme involving the use of the mails and wires. Cf. United States v. Viertel, No. S2 01 Cr. 571, 2005 WL 1053434, at *9 (S.D.N.Y. May 5, 2005) (holding that the 1996 audit was not material for the purposes of a Rule 33 motion filed by one of the petitioner's co-defendants because the audit "does nothing to undermine the clear evidence that invoices were sent by Burda Media in New York to Burda Holding in Germany and Burda Holding wire transferred funds to Burda Media," and that the petitioner and his co-defendant fraudulently obtained those funds), aff'd, 242 Fed. Appx. 779 (2d Cir. 2007).

Furthermore, the petitioner attempts to contravene his admission in open court that he was in fact guilty of each of the crimes charged and that each of the elements of each of the crimes had a factual basis. At his plea allocution, the petitioner stated under oath that he submitted false invoices for goods and services and that "[t]he mail and telephone were used in ordering or delivering these goods" and that "[t]he mails and wires were used in submitting invoices to Germany and obtaining deposits to the Burda New York accounts." (Plea Tr. 34.) A defendant's solemn acknowledgment of guilt is to be accepted absent

17

extraordinary circumstances.  See Adames v. United States, 171 F.3d 728, 732 (2d Cir. 1999) (citing United States v. Maher, 108 F.3d 1513, 1530 (2d Cir. 1997)); United States v. Caesar, 94 Cr. 59, 1995 WL 312443 at *3 (S.D.N.Y. May 23, 1995); United States v. Napolitano, 212 F. Supp. 743, 747 (S.D.N.Y. 1963) (Weinfeld, J.) (defendant's guilty plea should not be "lightly disregarded in favor of his present self-serving assertion").

There are two bail applications, one included with the § 2255 petition and one in connection with the coram nobis petition.  The petitioner has failed to show that "'the habeas petition raise[s] substantial claims and that extraordinary circumstances exist[ ] that make the grant of bail necessary to make the habeas remedy effective.'"  Grune v. Coughlin, 913 F.2d 41, 44 (2d Cir. 1990) (quoting Iuteri v. Nardoza, 662 F.2d 159, 161 (2d Cir. 1981)) (alterations in original); see generally Mapp v. Reno, 241 F.3d 221, 226-229 and n.5 (2d Cir. 2001).  In any event, the applications are **denied as moot**.

V.

In his Mandatory Judicial Notice dated September 11, 2007, the petitioner argues that his restitution obligations have been satisfied.  The sentencing transcript reflects that the amount of restitution was set at $2 million to reflect a civil settlement between the defendant and Burda Holding. (Sent. Tr. 12.)  The Court specifically noted that the order of restitution should

"provide that any amounts recovered by Burda from the defendant will be credited against the amount of restitution." (Sent. Tr. 12.) The petitioner's PSR states that Burda Holding's associate counsel advised the Probation Department that the petitioner had paid $913,005.34, with $1,086,995.57 outstanding. (PSR ¶ 17.)

The Government does not explain what the current balance is that is properly owed to Burda Holding. It appears from the PSR that the amount should be substantially less than $2 million. In view of the prior payments, the Government has an obligation to determine from the victim what amounts were taken from Blumenberg, or any others responsible for the loss, in order to determine the loss that remains unpaid. It is no answer for the Government to say that its accounts do not reflect any further payments from Blumenberg. The Court will refer the issue of restitution to the Magistrate Judge for a determination of the amount of the original orders of restitution for both Blumenberg and Viertel that remain unsatisfied. This is an ongoing issue in the criminal dockets for these defendants, No. 01 Cr. 571.

CONCLUSION

The Court has considered all of the petitioner's arguments. To the extent not specifically addressed above, they are either moot or without merit. The petitioner's § 2255 motion, as amended by his motion for a writ of error coram nobis and the "Mandatory Judicial Notice" dated April 8, 2006, is therefore **denied**.

Because the petitioner has failed to make a substantial showing of the denial of a constitutional right, the Court declines to issue a certificate of appealability pursuant to 28 U.S.C. § 2253(c). The Clerk is directed to enter Judgment and to close this case (No. 05 Civ. 9416).

The Court will refer the issue of the current balance of restitution in the criminal case, No. 01 Cr. 571, to the Magistrate Judge for a determination of the outstanding restitution amounts for both the petitioner and Viertel. Cf. Lyndonville Sav. Bank & Trust Co. v. Lussier, 211 F.3d 697, 700 (2d Cir. 2000) (noting report by Magistrate Judge in connection with a petitioner's motion to vacate a restitution order in connection with § 2255 petition); United States v. Hotte, No. 97 Cr. 669, 2007 WL 2891313 (E.D.N.Y. Sept. 28, 2007) (adopting Report and Recommendation prepared by Magistrate Judge in connection with motion to modify restitution order); 18 U.S.C. § 3664(d)(6).

SO ORDERED.

Dated: New York, New York
April 29, 2008

John G. Koeltl
United States District Judge